William Boyd SYKES, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A-12729.

Court of Criminal Appeals of Oklahoma.

July 22, 1959.

Rehearing Denied Aug. 5, 1959.

Rinehart, Rinehart & Rinehart, ElReno, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

William Boyd Sykes, plaintiff in error, hereinafter referred to as defendant, was charged in the county court of Canadian County with the offense of driving a motor vehicle while under the influence of intoxicating liquor, was tried before a jury, convicted and his punishment fixed at a fine of $400, and 30 days confinement in the county jail.

Defendant does not seek a reversal of the conviction, but does seek a modification of the sentence imposed, based upon the proposition:

"Said judgment and sentence is excessive and that by reason of admission of certain improper evidence the jury was swayed by passion and prejudice."

It is claimed that the county attorney in questioning the arresting officer gave too much prominence to the fact that defendant's companion in the car with him at the time of his arrest was a married woman, not his wife, and that she was intoxicated, and thus engendered passion and prejudice, causing the jury to assess greater punishment than it otherwise would for a first offense.

In the beginning it may be noted that the statute, 47 O.S.A. § 93, provides for imprisonment in the county jail for a period of not less than ten days, or more than one year, and a fine of not more than $500, and for revocation of a driver's license for 12 months. This for a first offense. A second offense charge constitutes a felony with much more severe punishment on conviction.

In making out its case the State called as a witness Phil Froneberger, State Highway Patrolman, who testified as to the facts of the arrest. Said he:

"I was traveling east on 66, approximately six miles east of the Banner junction, and a vehicle ahead of me I had noticed was weaving slightly on the road and he made a left turn from the right hand lane of traffic and a car that was about to pass this vehicle almost ran into him from behind. Then, the car executed a left turn and ran a stop sign and was almost struck by a westbound vehicle then on the other side of the traffic lane or the other traffic lane of the highway. Then the car went, continued on up the road north towards Banner for about, oh, a quarter of a mile, before I stopped him, before I caught him and stopped him.

"Q. All right now, Mr. Froneberger, for the benefit of the jury here, that highway, you say from the left hand lane—how many lanes of traffic or how many lanes on this highway you are talking about? A. There are four lanes.

"Q. Is there a difference between the four lanes? A. A median, yes."

Witness also testified that F. M. Cook, a mechanic who had been called to check a mechanical defect in the patrol car, was riding with him. The officer further testified:

"Q. Ok, to go back, you stopped his car in the Banner area. Tell again in your own words what happened, what took place, what you did, and what

Mr. Sykes did, etc. A. Well, I stopped the car, in the first place because he had committed two violations, traffic violations, when he made an improper left hand turn from the right hand lane and ran a stop sign I intended to stop him and talk to him about these two violations. When I got him stopped or at the time I could get out of my car he was, seemed unable to get his car to a stop. It rolled ahead, he couldn't get it out of gear, couldn't get the emergency brakes on. And he finally, he killed his car, just cut the switch off. And I asked him to get out of the car and I had to go up to the car, and he was fairly unsteady on his feet and smelled pretty strongly of alcohol or some alcoholic beverage. And I asked him for his driver's license and talked to him for a few minutes in reference to the two violations. And then I asked him how much he had had to drink. The first time I asked him he said he hadn't been drinking, and I just looked at him and kind of grinned and I said, 'How much did you say.' and he said, 'About four or five,' and I said, 'Beer or whiskey?' and he said, I believe he said, 'Beer'. There was a beer can in the car, and I placed him under arrest for driving under the influence and took him to the county jail.

"Q. Was he by himself in the car, Mr. Froneberger, when you stopped him? A. No, he was not.

"Q. Who was there with him? A. A woman by the name of Thrasher, Elfreda Thrasher."

Counsel for defendant objected to the witness mentioning the name of Mrs. Thrasher, the other occupant of defendant's car. This objection was overruled.

Witness further testified, as to the floor of the car on the passenger's side being wet and giving off an alcoholic odor, and that the passenger was so intoxicated that she had to be helped from the car. Counsel

moved for a mistrial by reason of this testimony, and the motion was overruled.

Witness further described the condition of defendant with the conclusion that he was intoxicated.

Silas M. Cook, the mechanic who rode with the arresting highway patrolman, testified substantially as Patrolman Froneberger.

L. A. Chappell testified that he was in March of 1958 night county jailer and that he observed the defendant when he was checked in to the county jail and it was his opinion from observing defendant that he was under the influence of intoxicants.

On cross-examination this witness admitted that he did not lock defendant in a cell, but permitted him to sleep on a cot in the sleeping quarters of witness.

Defendant testified and denied that he drove his car while under the influence of intoxicants, and emphasized the presence of his passenger by explaining that he had driven her to a dance hall at the request of the owner, who was on a deal to sell to her. He said that he stayed at the dance hall until about 2:00 A.M., and danced with a number of women, and he was returning Mrs. Thrasher to her home when he was arrested. He admitted that Mrs. Thrasher had a can of beer in her hand when she got in his car.

Defendant admitted previous convictions involving possession and transportation of whiskey.

This was proper cross-examination as bearing on the veracity of witness.

Two other witnesses testified to seeing defendant around 2:00 A.M. the morning in question, and gave it as their opinion that he was not under the influence of intoxicating liquor.

The jury by its verdict thought otherwise.

It is clear that the officer had a right to testify, not only to the manner in which the motor vehicle was being driven prior to causing it to be stopped, but as to what and whom he found inside after he ap-

proached the vehicle. It may be that the condition of the passenger and the fact that she was a married woman, and defendant a married man, played some part in the verdict. That is speculative.

We have decided that the fine of $400 should be reduced to $200, but the 30 days in jail sentence should stand.

The judgment and sentence entered as so modified is affirmed.

NIX and BRETT, JJ., concur.